**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NOVACLOUD LICENSING LLC,   )
            )
    Plaintiff,    )
            )
  v.        )
            ) C.A. No. 26-433-MN
COX COMMUNICATIONS, INC.,   )
            )
    Defendant.   )

## <u>COX COMMUNICATIONS, INC.'S MOTION TO STAY</u>

|  |  |
|---|---|
|  | Kelly E. Farnan (#4395) |
|  | Sara M. Metzler (#6509) |
|  | Richards, Layton & Finger, P.A. |
|  | One Rodney Square |
| OF COUNSEL: | 920 N. King Street |
|  | Wilmington, DE 19801 |
| Mitchell G. Stockwell | (302) 651-7700 |
| Michael J. Turton | farnan@rlf.com |
| Christopher S. Leah | metzler@rlf.com |
| KILPATRICK TOWNSEND & STOCKTON LLP |  |
| 1100 Peachtree Street, NE | *Attorneys for Defendant Cox* |
| Suite 2800 | *Communications, Inc.* |
| Atlanta, GA 30309 |  |
| (404) 815-6500 |  |

Dated: July 24, 2026

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.    SUMMARY OF THE ARGUMENT ...................................................................... 2

III.    STATEMENT OF THE FACTS ...................................................................... 2

IV.    LEGAL STANDARD...................................................................................... 5

V.    ARGUMENT ................................................................................................ 7

    A.    All Three Factors Courts Consider in Deciding Whether to Stay a Litigation Weigh in Favor of Granting a Stay in this Case ..................................................... 7

        i.    The Current Stage of the Litigation Favors a Stay ............................................ 7

        ii.    A Stay Would Simplify the Issues ................................................................ 7

        iii.    NovaCloud Would Not Be Prejudiced by a Stay ........................................... 9

    B.    All Three Factors Courts Consider in Deciding Whether to Apply the Customer Suit Exception Weigh in Favor of its Application and Staying the Case. ..................................... 10

        i.    Cox Is Merely a Reseller of the Accused Instrumentalities. ....................................... 10

        ii.    Comcast Is the Only Supplier to Cox of the Accused Instrumentalities. ..................... 13

        iii.    Cox Agrees to Be Bound by the Outcome of the Comcast DJ.................................... 13

VI.    CONCLUSION................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Codex Corp. v. Milgo Elec. Corp.*,
  553 F.2d 735 (1st Cir. 1977)................................................................................................6

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800, 817 (1976)....................................................................................................5

*Comcast Cable Communications, LLC v. NovaCloud Licensing LLC*,
  Case No. 4:26-cv-04259 (N.D. Cal. May 8, 2026)..............................................................2

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006).............................................................................................9

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ...............................................................................5, 9, 11

*Honeywell Int'l Inc. v. Audiovox Commc'n Corp.*,
  Nos. Civ.A. 04-1337-KAJ, Civ.A. 04-1338-KAJ, Civ.A. 04-1536-KAJ, 2005
  WL 2465898 (D. Del. May 18, 2005)...................................................................................7

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990)............................................................................................6

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952)..............................................................................................................5

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
  855 F. Supp. 673 (D. Del. 1994)...........................................................................................8

*Murata Mach. USA v. Daifuku Co.*,
  830 F.3d 1357 (Fed. Cir. 2016).............................................................................................5

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014).............................................................................................6

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
  No. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012) ...................................... *passim*

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008)...............................................................................................................9

*Round Rock Rsch. LLC v. Dole Food Co.*,
  Nos. 11-1239-RGA, 11-1241-RGA, 11-1242-RGA, 2012 WL 1185022 (D.
  Del. Apr. 6, 2012) ...................................................................................................................6

ii

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
　657 F.3d 1349 (Fed. Cir. 2011)........................................................................................5

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
　458 F.3d 1335 (Fed. Cir. 2006)........................................................................................7

*Vehicle IP LLC v. Wal-Mart Stores, Inc.*,
　No. 10-503-SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010) .................................................6

Twenty-three days after Plaintiff NovaCloud Licensing LLC ("NovaCloud") filed this patent infringement suit against Cox Communications, Inc. ("Cox"), Cox's supplier of the accused instrumentalities in this case, Comcast Cable Communications, LLC ("Comcast"), filed a declaratory judgment action against NovaCloud, seeking a judgment of no infringement of the same patents by the same accused instrumentalities at issue in this case. Although this case was filed first by a mere twenty-three days before Comcast filed its declaratory judgment action, the customer suit exception to the first-to-file rule applies because Comcast supplies Cox with the accused instrumentalities, Comcast is Cox's only supplier of those accused instrumentalities, and Cox has agreed to be bound by the outcome of Comcast's declaratory judgment action. Therefore, a stay of this nascent litigation will greatly simplify the issues in this case and will not prejudice NovaCloud. Indeed, it would be inefficient and burdensome for the Court, the jury, the witnesses, and the parties to continue with this case while the Comcast DJ is pending, as it raises the possibility of superfluous or inconsistent adjudications.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On April 15, 2026, NovaCloud filed this patent infringement suit alleging that Cox infringes U.S. Patent Nos. 8,145,721 (the "'721 Patent"); 8,949,206 (the "'206 Patent"); and RE47,612 (the "RE'612 Patent") (collectively, the "Asserted Patents") through its use of services and products Cox purchases from third party Comcast. NovaCloud's infringement allegations make clear that the accused instrumentalities are technologies provided to Cox by Comcast, including the network infrastructure for and implementation of Comcast's Dynamic Ad Insertion ("Comcast's DAI"), Dynamic Adaptive Streaming over HTTP protocol ("DASH"), and adaptive bitrate ("ABR") streaming, which are incorporated in the Cox TV App and Cox Contour.

1

Twenty-three days after NovaCloud filed suit against Cox, and in direct response to the infringement allegations therein, Comcast brought a declaratory judgment action against NovaCloud in the Northern District of California. *Comcast Cable Communications, LLC v. NovaCloud Licensing LLC*, Case No. 4:26-cv-04259, D.I. 1, Complaint (N.D. Cal. May 8, 2026) (the "Comcast DJ"). The Comcast DJ seeks a declaration that its "network infrastructure for an implementation of ABR streaming and DAI technology," which is used by Cox, does not infringe the Asserted Patents.

This case is in its infancy: the parties have not held a Rule 16 conference, initial disclosures have not been served, discovery has not commenced, and no schedule, let alone a trial date, has been set. To promote judicial economy and conserve party resources, Cox seeks a stay of this litigation pending resolution of Comcast's declaratory judgment action under the customer suit exception.

## II.    SUMMARY OF THE ARGUMENT

1.    A stay of this case is warranted because resolution of the Comcast DJ will simplify, and potentially fully resolve, the issues in this case, which is in the pleadings stage, and NovaCloud will suffer no prejudice.

2.    The customer suit exception applies because all three factors are satisfied: Cox is merely a reseller of the accused instrumentalities, the accused instrumentalities are provided exclusively by Comcast, and Cox has agreed to be bound by the outcome of the Comcast DJ.

## III.    STATEMENT OF THE FACTS

On April 15, 2026, NovaCloud filed a Complaint alleging that Cox infringes the Asserted Patents through its use of Comcast's DAI, DASH, and ABR streaming. Each of these accused instrumentalities are incorporated in the services and products Cox purchases from Comcast and

ultimately in the Cox Contour and Cox TV App offered to Cox's customers. D.I. 1, Complaint, ¶¶ 15, 20, 28, 33, 41, 46, Exs. 4–6. Specifically, NovaCloud asserts claim 14 of the '721 Patent, claim 1 of the '206 Patent, and claim 26 of the RE'612 Patent. *Id.* ¶¶ 20, 33, 46, Exs. 4–6.

NovaCloud's infringement contentions chart for the '721 Patent specifically highlights a Comcast host URL as an "[e]xemplary Cox traffic capture" that allegedly meets claim element 14a. Complaint, Ex. 4 at 4. NovaCloud also highlights a Comcast host URL as an "[e]xemplary Cox traffic capture" that allegedly meets claim element 14c. *Id.* at 6.

NovaCloud's infringement contentions chart for the '206 Patent states that "Cox's Accused Instrumentalities includes without limitation the servers, relays, computers, and other infrastructure used to operate Cox Contour including Comcast DAI." Complaint, Ex. 5 at 1. NovaCloud further alleges that the "Cox Contour system actively creates different descriptor files, using DAI technology from Comcast," which NovaCloud alleges meets claim element 1, and includes a screen capture of the purported "Cox Contour manifest" identifying Comcast within the manifest. *Id.* at 2. A similar "Cox Contour manifest capture[]" identifying Comcast is also included in NovaCloud's claim chart for claim element 1b. *Id.* at 5.

NovaCloud's infringement contentions chart for the RE'612 Patent is peppered with Comcast URLs as allegedly meeting several claim limitations. For instance, for claim element 26b, NovaCloud includes a screen capture of an alleged "[e]xemplary Cox MPD File" identifying a Comcast URL. Complaint, Ex. 6 at 6. NovaCloud also includes a screen capture of an alleged "DASH playlist" identifying a Comcast URL for claim element 26d. *Id.* at 10. NovaCloud further includes another two screen captures of alleged "[e]xemplary Cox MPD's" both identifying a Comcast URL for claim element 26f. *Id.* at 13–14. Again, NovaCloud includes yet another two screen captures of alleged "[e]xemplary Cox MPD's" both identifying a Comcast URL for claim

3

element 26g. *Id.* at 15–16. And for claim element 26h, NovaCloud includes a screen capture of alleged "[e]xemplary Cox Traffic" identifying a Comcast URL. *Id.* at 16, 18. For claim element 26i, NovaCloud includes yet another screen capture of an alleged "[e]xemplary Cox MPD" identifying a Comcast URL. *Id.* at 18–19.

On May 8, 2026, Comcast filed a declaratory judgment action. Comcast DJ, D.I. 1. The Complaint to Comcast's DJ is attached at Exhibit 1. The Comcast DJ seeks a declaration of no infringement of the '721 Patent, '206 Patent, and RE'612 Patent, which are the same patents at issue in this case. *Id.* at 4–6. The Comcast DJ Complaint specifically identifies claim 14 of the '721 Patent, claims 1 and 14 of the '206 Patent, and claim 26 of the RE'612 Patent as not being infringed by the Comcast "network infrastructure for and implementation of ABR streaming and DAI technology." *Id.* at 4–6. These claims and accused instrumentalities overlap completely with the claims and accused instrumentalities in this case. Indeed, Comcast identifies Cox as "Comcast's customer" and states that NovaCloud's infringement allegations in this case are specifically directed to "Cox's use of Comcast's Dynamic Ad Insertion ("DAI") technology," "and its use of the MPEG-DASH standard for ABR streaming," all of which are incorporated in the products and services provided to Cox by Comcast. *Id.* ¶¶ 12–14. Thus, Comcast alleges "NovaCloud knew its allegations against Cox—in which NovaCloud expressly defines Cox's 'Accused Instrumentalities' as 'including use of Comcast DAI'—would be objectively and reasonably interpreted as an implied assertion of infringement against Comcast." *Id.* ¶ 14.

In addition to the allegations in the pleadings in this case and the Comcast DJ showing that Cox is a customer of Comcast, Cox's AVP of Strategic Partnerships, Daniel Graham, has confirmed that Cox is a customer of Comcast. Specifically, Mr. Graham has stated that "Cox is a syndicate of Comcast Cable Communications, LLC ("Comcast"), which means that Cox is a

customer of Comcast and utilizes certain Comcast technology, products, and services for distributing Cox's cable programming." Ex. 2, Decl. of Daniel Graham, ¶ 3. The "technologies, products, and services that Cox purchases from Comcast include Comcast's Dynamic Ad Insertion and adaptive bitrate streaming technology." *Id.* Further, "Cox does not have control over the operation or implementation of the Comcast DAI provided by Comcast." *Id.* ¶ 4. Likewise, "Cox does not have control over the operation or implementation of the ABR streaming technology provided by Comcast" or the technology NovaCloud alleges incorporates the DASH protocol. *Id.* ¶¶ 5–6.

## IV.    LEGAL STANDARD

"The Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation." *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). To avoid duplicative litigation and avoid "wasteful and unnecessary litigation," or "conflicting decisions," a court may stay one case pending the resolution of another. *Google*, 588 F. App'x at 990. "The ability to stay cases is an exercise of a court's inherent power to manage its own docket." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016).

The customer suit exception is an application of the doctrine of comity. "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). This exception recognizes that "in reality, the manufacturer is the true defendant in the customer suit. . . .[I]t is a simple fact of life

5

that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (alteration in original) (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)); *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) ("When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence."). Accordingly, "when 'litigation [is] against or brought by the manufacturer of infringing goods [it] takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12-088-RGA, 2012 WL 2803695, at *3 (D. Del. July 10, 2012) (alterations in original) (quoting *Katz*, 909 F.2d at 1464).

The first step in evaluating whether a stay is appropriate under the customer suit exception is to weigh the three factors general to motions to stay: "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage." *Pragmatus Telecom*, 2012 WL 2803695, at *1 (citing *Round Rock Rsch. LLC v. Dole Food Co.*, Nos. 11-1239-RGA, 11-1241-RGA, 11-1242-RGA, 2012 WL 1185022, *1 (D. Del. Apr. 6, 2012); *Vehicle IP LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at *1 (D. Del. Nov. 22, 2010)).

The second step in evaluating whether a stay is appropriate under the customer suit exception is to weigh the three factors specific to the customer suit exception: "(1) whether the Customers are merely resellers; (2) whether the Customers agree to be bound by any decision in the Manufacturer's case; and (3) whether the Manufacturer is the sole source of infringing

products." *Pragmatus*, 2012 WL 2803695, at *3 (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)). Overall, the "guiding principles for [the Customer Suit Exception] are efficiency and judicial economy." *Id.* (alternation in original) (citation omitted).

## V.   ARGUMENT

### A. All Three Factors Courts Consider in Deciding Whether to Stay a Litigation Weigh in Favor of Granting a Stay in this Case

#### i.   The Current Stage of the Litigation Favors a Stay

The current stage of this litigation strongly favors a stay. This case has barely begun. The parties have not held a Rule 26 conference, have not yet served initial disclosures, discovery has not commenced, and no schedule has been set, let alone a trial date. *See Honeywell Int'l Inc. v. Audiovox Commc'n Corp.*, Nos. Civ.A. 04-1337-KAJ, Civ.A. 04-1338-KAJ, Civ.A. 04-1536-KAJ, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (granting a stay where it "comes at time when discovery has not even begun and no trial date has been set"). A stay at this early juncture is thus favored.

#### ii.   A Stay Would Simplify the Issues

A stay pending the Comcast DJ would simplify the issues in this case regardless of the outcome. The patents at issue and accused technologies overlap completely and the outcome of the Comcast DJ will directly impact, and may fully resolve, this case, particularly because Cox has agreed to be bound by the outcome of the Comcast DJ.

Just like in *Pragmatus*, where a court in this District stayed the first-filed infringement actions in favor of a later-filed declaratory judgment action filed by the supplier of the allegedly infringing software, the patents asserted and the allegedly infringing technology are the same in this case as those at issue in the Comcast DJ. 2012 WL 2803695, at *1. As stated above,

NovaCloud alleges Cox infringes the Asserted Patents through its use of Comcast's DAI, DASH, and ABR streaming in the Cox Contour and Cox TV App offered to Cox's customers. D.I. 1, Complaint, ¶¶ 15, 20, 28, 33, 41, 46, Exs. 4–6. In the Comcast DJ, Comcast identifies Cox as "Comcast's customer" and states that NovaCloud's infringement allegations in this case are specifically directed to "Cox's use of Comcast's Dynamic Ad Insertion ("DAI") technology," "and its use of the MPEG-DASH standard for ABR streaming," all of which are incorporated in the products and services provided to Cox by Comcast. *Id.* ¶¶ 12–14. Because of the overlap in the patents asserted and technologies accused, "any ruling in the [manufacturer] Action would simplify the issues in the Customers' cases." 2012 WL 2803695, at *2.

If the Comcast DJ proceeds and the NovaCloud patents are found not infringed by Comcast, then NovaCloud would be collaterally estopped from asserting its patents against Cox based on its use of Comcast technology. *See Pragmatus*, 2012 WL 2803695, at *2 ("If the [manufacturer] Action results in a finding that the patents-in-suit are invalid, that will resolve all the cases" and "[i]f the [manufacturer] Action results in a finding that [manufacturer] does not infringe the patents, that may resolve the issue of the Customers' infringement; at the least, it will simplify the issue"); *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha,* 855 F. Supp. 673, 678 (D. Del. 1994) (applying claim and issue preclusion because "allegedly infringing devices in this case are the exact same machines that were the subject of [a previous suit]"). As evidenced by both NovaCloud's complaint in this case and Comcast's complaint in the Comcast DJ, the accused instrumentalities here are only technologies that Comcast provides to Cox. *See* D.I. 1, Complaint, ¶¶ 15, 20, 28, 33, 41, 46, Exs. 4–6; Comcast DJ, Complaint, ¶¶ 12–14. This is further confirmed by Daniel Graham, the AVP of Strategic Partnerships at Cox, who stated that Comcast supplies

8

Comcast's DAI technology, ABR streaming technology, and technology that allegedly incorporates the DASH protocol to Cox. Ex. 2, ¶¶ 3–6.

If the NovaCloud patents are found infringed by the Comcast technology, and Comcast pays damages, including based on its sales of that technology to its customer Cox, then NovaCloud's claim against Cox based on its use of the same accused instrumentalities will be exhausted. *See Pragmatus*, 2012 WL 2803695, at *2 ("[I]f [plaintiff] prevails and [manufacturer] fully compensates [plaintiff] for its Customers' use of the [manufacturer's] technology, [plaintiff] would be barred from seeking further compensation from the Customers based on the same harm."); *Quanta Comput., Inc. v. LG Elecs., Inc.,* 553 U.S. 617, 638 (2008) ("authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article"); *Glenayre Elecs., Inc. v. Jackson,* 443 F.3d 851, 873 (Fed. Cir. 2006) ("Jackson may not relitigate the issue of whether Glenayre can be held liable for additional damages based on infringement by Glenayre's customers; the damages award he has accepted fully compensates him as a matter of law.").

Thus, regardless of whether the claims are found not infringed by Comcast or valid and infringed by Comcast, this case will have been drastically simplified and "substantial savings of litigation resources can be expected." *See Google*, 588 F. App'x at 991. To be sure, however, Cox has agreed to be bound to the outcome of the Comcast DJ, which will further significantly simplify the issues here, regardless of what that outcome is.

### iii.    NovaCloud Would Not Be Prejudiced by a Stay

NovaCloud will not be prejudiced by a stay. The issues in this case are substantially the same as those to be decided in the Comcast DJ and this case is in its infancy. Moreover, NovaCloud is a non-practicing entity, and thus "[a]ny purported harm that [plaintiff] suffers from a stay can be fully compensated by monetary damages." *Pragmatus*, 2012 WL 2803695, at *2. In *Pragmatus*,

"Pragmatus argue[d] that it would be prejudiced by a stay because the LivePerson software is only a component of the Customers' infringing systems, and Pragmatus is entitled to compensation for the use of the entire invention, not just a component." 2012 WL 2803695, at *3. However, the court disagreed because a stay "would not bar Pragmatus from receiving full compensation, where compensation is due." *Id.*

The same analysis applies here. NovaCloud's infringement allegations make clear that the accused instrumentalities are technologies provided to Cox by Comcast, including Comcast's DAI, DASH, and ABR streaming, which are incorporated in the Cox TV App and Cox Contour. Complaint, ¶¶ 15, 20, 28, 33, 41, 46, Exs. 4–6. But, to the extent NovaCloud contends it is entitled to compensation for the use of the entire Cox TV App and Cox Contour, rather than just the use of Comcast's DAI, DASH, and ABR streaming, a stay would not bar NovaCloud "from receiving full compensation, where compensation is due." *Pragmatus*, 2012 WL 2803695, at *3. Therefore, NovaCloud will not be prejudiced or disadvantaged by a stay.

**B. All Three Factors Courts Consider in Deciding Whether to Apply the Customer Suit Exception Weigh in Favor of its Application and Staying the Case.**

**i.    Cox Is Merely a Reseller of the Accused Instrumentalities.**

NovaCloud is accusing Cox of infringing the Asserted Patents based on its use of technology that Comcast provides to Cox. This is shown in both NovaCloud's Complaint and the Comcast DJ, and is further confirmed by Daniel Graham, Cox's AVP of Strategic Partnerships.

NovaCloud's Complaint and the Comcast DJ illustrate that each of the accused instrumentalities here—Comcast's DAI, DASH, and ABR streaming—are "central and a major issue" to both this case and the Comcast DJ. This is analogous to *Pragmatus*, where the Court stayed the customers' action, finding that "the Customers' use of the LivePerson technology is central and a 'major issue' not only to the LivePerson Action, but also to the action against the

Customers." 2012 WL 2803695, at *4. Similarly, in *Google*, the Federal Circuit found that a stay should have been granted when "the record strongly suggests there will be substantial similarity involving the infringement and invalidity issues in all the suits." 588 F. App'x at 990.

Specifically, NovaCloud alleges that Cox infringes the Asserted Patents through its use of Comcast's DAI, DASH, and ABR streaming, each of which are incorporated in the services and products Cox purchases from Comcast and ultimately in the Cox Contour and Cox TV App offered to Cox's customers. D.I. 1, Complaint, ¶¶ 15, 20, 28, 33, 41, 46, Exs. 4–6. Likewise, the Comcast DJ identifies Cox as "Comcast's customer" and states that NovaCloud's infringement allegations in this case are specifically directed to "Cox's use of Comcast's Dynamic Ad Insertion ("DAI") technology," "and its use of the MPEG-DASH standard for ABR streaming," all of which are incorporated in the products and services provided to Cox by Comcast. Comcast DJ, Complaint, ¶¶ 12–14. Comcast goes on to allege that the Comcast "network infrastructure for and implementation of ABR streaming and DAI technology" does not infringe the Asserted Patents. Comcast DJ, Complaint, 4–6. And, according to Comcast, "NovaCloud knew its allegations against Cox—in which NovaCloud expressly defines Cox's 'Accused Instrumentalities' as 'including use of Comcast DAI'—would be objectively and reasonably interpreted as an implied assertion of infringement against Comcast." *Id.* ¶ 14. Therefore, the accused instrumentalities here—Comcast's DAI, DASH, and ABR streaming—are "central and a major issue" to both actions.

The evidence that NovaCloud cites in its infringement contention charts attached to the Complaint as purportedly showing infringement further confirms that Cox is a mere reseller of the accused instrumentalities. For example, NovaCloud's chart for the '721 Patent, attached to the Complaint as Exhibit 4, specifically highlights Comcast host URLs as allegedly meeting multiple

11

claim elements for which NovaCloud alleges Cox infringes. Complaint, Ex. 4 at 3–6. Likewise, NovaCloud's chart for the '206 Patent specifically alleges that the accused instrumentalities infringe claim 1 based on the "Cox Contour system actively creat[ing] different descriptor files, using DAI technology from Comcast." Complaint, Ex 5 at 1–2. NovaCloud further identifies Comcast's role within a screen capture of a purported "Cox Contour manifest" as evidence of infringement of multiple claim elements of the '206 Patent. *Id.* at 2, 5. Similarly, NovaCloud's chart for the RE'612 Patent is peppered with Comcast URLs as allegedly meeting numerous claim limitations. For instance, NovaCloud supports its infringement allegations with its identification of Comcast URLs in screen captures of alleged "[e]xemplary Cox MPD Files," a "DASH playlist" and "[e]xemplary Cox Traffic." Complaint, Ex. 6 at 6, 10, 13–19.

Daniel Graham, Cox's AVP of Strategic Partnerships, has also confirmed that "Cox is a syndicate of Comcast Cable Communications, LLC ("Comcast"), which means that Cox is a customer of Comcast and utilizes certain Comcast technology, products, and services for distributing Cox's cable programming." Ex. 2, ¶ 3. And "Cox does not have control over the operation or implementation of the Comcast DAI," "ABR streaming technology," or "the technology that allegedly incorporates the DASH protocol" as provided to Cox by Comcast. *Id.* ¶¶ 4–6. Nor does Cox "develop, modify, or customize the Comcast DAI," "ABR streaming technology," or "the technology that allegedly incorporates the DASH protocol" as provided to Cox by Comcast. *Id.* Cox's lack of control over the operation or specific implementation of these technologies supports the fact that Cox is merely a reseller of the accused instrumentalities. Therefore, this factor weighs in favor of applying the customer suit exception.

### ii.    Comcast Is the Only Supplier to Cox of the Accused Instrumentalities.

Comcast is Cox's only supplier of the accused instrumentalities for Cox Contour and Cox TV App. Ex. 2, ¶ 4–6; *see Pragmatus*, 2012 WL 2803695, at *3. Thus, this factor weighs in favor of applying the customer suit exception.

### iii.    Cox Agrees to Be Bound by the Outcome of the Comcast DJ.

Cox agrees to be bound by the outcome of the Comcast DJ. This is similar to the customers in *Pragmatus* that agreed to be bound by the outcome of the manufacturer's suit. *See Pragmatus*, 2012 WL 2803695, at *3. Accordingly, this factor weighs in favor of applying the customer suit exception.

Although generally addressed as an independent factor for applying the customer suit exception, Cox's agreement to be bound by the outcome of the Comcast DJ also reinforces nearly all the other factors considered. Indeed, this agreement allows the stay to further simplify the issues in the matter. It also further reduces any alleged prejudice to NovaCloud by minimizing NovaCloud's litigation costs. Moreover, it further illustrates that Cox is merely a reseller of the accused instrumentalities provided to it exclusively by Comcast. Therefore, Cox's agreement to be bound by the outcome of the Comcast DJ weighs heavily in favor of a stay of this litigation.

## VI.    CONCLUSION

For the reasons stated above, Cox respectfully requests that this Court stay the present case pending the resolution of the Comcast DJ.

13

/s/ Kelly E. Farnan

OF COUNSEL:

Mitchell G. Stockwell
Michael J. Turton
Christopher S. Leah
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
(404) 815-6500

Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Defendant Cox Communications, Inc.*

Dated:  July 24, 2026

14